IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M. GARCIA, et al.,           : | | CIVIL ACTION |
|     Plaintiffs  : | | |
|                        : | | |
| vs.           : | | NO. 13-6316 |
|                        : | | |
| WILLIAM NUNN, et al.,        : | | |
|     Defendants  : | | |

**M E M O R A N D U M**

**STENGEL, J.**                                                              March 24, 2016

      This is a putative class and collective action brought by two janitors on their own behalf and on behalf of other similarly situated workers alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 330.101, *et seq.*, and the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.* The plaintiffs claim that, despite working well over forty hours per week, they were denied the overtime premium pay required by the above statutes.

      The plaintiffs have filed a motion to facilitate notice to potential plaintiffs informing them of their right to opt-in under the FSLA, 29 U.S.C. § 216(b).[1] The defendants responded in opposition, arguing that even under the statute's lenient standard, the plaintiffs have failed to provide admissible evidence that they are similarly

---

[1] Title 29 of the United States Code, Section 216(b) provides, in pertinent part: "An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

situated to the individuals on behalf of whom they seek certification. For the following reasons, I will grant the motion.

## I. BACKGROUND

The amended complaint alleges that the plaintiffs "were hired to provide cleaning and janitorial services at various grocery stores in Pennsylvania, New Jersey, and other states." See Am. Compl. ¶ 2. Plaintiff M. Garcia, who resides in Charlotte, North Carolina, worked as a cleaner in and around Lancaster, Pennsylvania from approximately June 2008 until approximately March 2013. Id. at ¶¶ 13, 15. He "was scheduled to work seven days a week from approximately 10 p.m. to 7 a.m. the following morning," and "regularly worked more than forty hours per week . . . without overtime compensation." Id. at ¶ 16.

Plaintiff O. Garcia, who resides in Mt. Pocono, Pennsylvania, worked as a cleaner from approximately March 2009 until approximately October 2013, in Maryland, Delaware, Pennsylvania, New York, and New Jersey. See Am. Compl. ¶¶ 18, 20. From "approximately June 2012 until October 2013," Plaintiff O. Garcia "clean[ed] stores in Manalapan, New Jersey." Id. at ¶ 21. Plaintiff O. Garcia "was scheduled to work seven days a week from approximately 10 p.m. to 6 a.m. the following morning," and "regularly worked more than forty hours per week . . . without overtime compensation." Id. at ¶ 22.

The amended complaint further alleges that the three remaining defendants[2] "trained," "closely monitored," "directed," and "supervised" the plaintiffs. Id. at ¶¶ 38-41. The defendants allegedly "required Plaintiffs to sign in and sign out of every grocery store they cleaned each night" and "provided Plaintiffs with the work space and work tools, including buffers, and other cleaning materials necessary to perform their work." Id. at ¶¶ 40, 42. The plaintiffs contend that that the defendants "paid Plaintiffs the same sum every two weeks that they worked at least their scheduled hours." Id. at ¶ 47.

The plaintiffs seek to assert their FLSA claim as a collective action on behalf of all current and former employees who have worked for Defendant William Nunn, Alaco Services, and LRD Cleaning Services, as "cleaners at any location in the United States within the past three years of the filing of a consent to sue by such employee and the date of final judgment in this matter." See Am. Compl. ¶ 24.

## II. LEGAL STANDARD

"The FLSA establishes federal minimum wage, maximum hour, and overtime guarantees that cannot be modified by contract." Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242 (3d Cir. 2013) (quoting Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1527 (2013). Under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), an employee may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other "similarly situated" employees. Camesi, 729 F.3d at 242. In order to become parties to a collective action under Section 16(b), employees must

---

[2] On September 23, 2015, I granted Defendant Weis Markets' motion to dismiss. See Document #38.

affirmatively opt-in by filing written consents with the court. See 29 U.S.C. § 216(b). This feature distinguishes the collective action mechanism under Section 16(b) from the class action mechanism under Federal Rule of Civil Procedure 23, where, once the class is certified, those not wishing to be included in the class must affirmatively opt-out. Camesi, 729 F.3d at 243.

Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA. Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 535 (3d Cir. 2012). Initially, the court makes a preliminary determination as to whether the named plaintiff has made a "modest factual showing that the employees identified in the complaint are similarly situated." Camesi, 729 F.3d at 243; see also Zavala, 691 F.3d at 536, n.4 (applying a "fairly lenient standard" at the first step, the court makes a preliminary determination as to whether the named plaintiffs have made a "modest factual showing" that the employees identified in their complaint are "similarly situated").

In Symczyk, the Third Circuit recently clarified the standard applied to adjudicate a motion for conditional certification, finding that:

> Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. We believe the "modest factual showing" standard – which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions – best comports with congressional intent and with the Supreme Court's directive that a court "ascertain[ ] the contours of [a collective] action at the outset."

4

Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192-93 (3d Cir. 2011) *rev'd on other grounds*, Symczyk, 133 S.Ct. at 1532. If the plaintiffs satisfy their burden, the court will "conditionally certify" the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pretrial discovery. Zavala, 691 F.3d at 536.

The second step may be triggered by the plaintiffs' motion for "final certification," by the defendants' motion for "decertification," or, commonly, by both. At this step, with the benefit of discovery, "a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted-in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193. The court assesses all the relevant factors, including "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." Zavala, 691 F.3d at 536-37. At the final certification stage, the plaintiffs bear the burden of proving that the class members are similarly situated by a preponderance of the evidence. Id. at 537. Being similarly situated does not mean simply sharing a common status; rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA. Id. at 538. If the plaintiffs succeed in carrying their heavier burden at this stage, the case may proceed on the merits as a collective action. Id. at 537.

## II. DISCUSSION

### A. Conditional Certification

Significantly, conditional certification does not extend beyond the preliminary issue of whether notice should be sent to the potential class members. The Third Circuit has repeatedly observed that the only consequence of conditional certification is the issuance of notice to potential class members. See Symczyk, 656 F.3d at 194; Zavala, 691 F.3d at 536. Whether the lawsuit ultimately proceeds as a collective action is determined later in the litigation after the benefit of discovery. Symczyk, 656 F.3d at 193. Because conditional certification concerns merely the issuance of notice, courts should err in favor of providing notice to employees. See Craig v. Rite Aid Corp., 2009 U.S. Dist. LEXIS 114785, *9 (M.D. Pa. Dec. 9, 2009) ("The burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification and the court will have the opportunity to deny final certification"); see also Sabol v. Apollo Group, Inc., 2010 U.S. Dist. LEXIS 47145, *10 (E.D. Pa. May 12, 2010) ("Presumably because of the threshold requirement's leniency, the initial determination usually results in conditional certification."); Evans v. Lowe's Home Centers, Inc., 2004 U.S. Dist. LEXIS 15716, *6 (M.D. Pa. June 17, 2004) ("Typically, the first step results in an automatic conditional certification because of the relatively light standard and minimal evidence").

Here, the plaintiffs' motion is limited to the first step in this process. Accordingly, I will address only that part of the two-tier analysis, i.e., whether the plaintiffs can make a

6

"modest factual showing that the proposed recipients of opt-in notices are similarly situated." See Symczyk, 656 F.3d at 193. The plaintiffs seek to distribute a notice to cleaners who were hired by the defendants in an effort to inform them of their rights and their ability to join this action. These potential opt-in plaintiffs were hired to provide janitorial services to various stores, yet were allegedly forced to work more than forty hours per week without being paid overtime in violation of federal and state statutes. The plaintiffs argue that the notice should issue here in order to advance the broad remedial purposes of a § 216(b) collective action, which include: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. Hoffman La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). I agree.

     At this stage of the litigation, the evidence is sufficient to meet the "modest factual showing" requirement, and the plaintiffs have met this low burden through their declarations. In his declaration, M. Garcia declares that he had worked for the defendants as a cleaner from approximately June 2008 until approximately 2013 in and around Lancaster, Pennsylvania and occasionally in Delaware, Maryland, New York, and New Jersey. He indicated that the defendants employed at least twelve cleaners who cleaned approximately twenty supermarkets, and all the other cleaners had the same job responsibilities that M. Garcia did. He also indicated that the defendants never paid him or any other cleaner an overtime premium pay for hours worked over forty. See Document #15-3.

In his declaration, O. Garcia declares that he had worked as a cleaner for the defendants from approximately March 2009 until approximately October 2013 at supermarkets in Delaware, Maryland, New York, New Jersey, and Pennsylvania. He and the other cleaners performed the same job duties. He and his wife were scheduled to work for the defendants seven days each week from approximately 10:00 p.m. to 6:00 a.m., well over forty hours each week. The defendants never paid O. Garcia, his wife, or any other cleaner an overtime premium pay for hours worked over forty. See Document #15-4. Both declarants indicated that the defendants were aware of the hours each employee worked because the defendants assigned the work to each employee. Also, employees typically clocked in and out at the beginning and end of their shifts.

Both plaintiffs have declared that they regularly worked over forty hours each week but were never paid overtime. Based on their own personal knowledge and observations, the plaintiffs are aware that other cleaners employed by the defendants were similarly situated as they performed the same job functions as the plaintiffs but were also not paid an overtime rate for hours worked over forty. The plaintiffs have also shown that the defendants were aware of the overtime hours worked by their employees because the defendants created the cleaners' schedules and assigned them their work.

Under the circumstances of this case, I find that the plaintiffs have met the lenient first step of conditional certification by making a "modest factual showing" that there are similarly situated persons who may desire to opt into this litigation. Accordingly, I will conditionally certify a collective action consisting of all persons who were hired by the defendants to provide cleaning and janitorial services at supermarkets who worked more

than forty hours in a week and were not paid overtime, during a period beginning three years prior to the filing of this complaint until the date of final judgment in this action.

### B. Form of Notice and Opt-In Consent

Once a court conditionally certifies a collective action, it possesses the discretion to provide court-facilitated notice. Hoffmann-La Roche, 493 U.S. at 170. District courts have wide discretion in the implementation of notice to proposed plaintiffs. Id. at 169 (decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion). As the Supreme Court observed when discussing the importance of providing notice to employees, "The broad remedial goal of the statute should be enforced to the full extent of its terms." Hoffman-La Roche, 493 U.S. at 173. Sending notice, and thereby encouraging employees to enforce their rights, helps to advance the FLSA's enforcement mechanism, which relies "not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" Kasten v. Saint-Gobain Performance Plastics Corp., 562 U.S. 1, 11 (2011) (quoting Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960)). Without notice of their rights, these potential opt-in plaintiffs will not have the opportunity to vindicate their rights.

In order to protect an individual's FLSA rights from being diminished through lack of notice, the Supreme Court has held that district courts should facilitate the issuance of a notice informing potential opt-in plaintiffs of the pending FLSA collective action. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. at 170. The Supreme Court has

further held that district courts have a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Id. at 170-71.  Courts have routinely found that facilitation of notice serves the important policy goals of preserving judicial economy, reducing duplicative litigation, and lowering the cost of litigation.  Id. (finding that "accurate and timely" notice to class members serves the twin judicial policies of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action").  Without court-supervised notice, the plaintiffs have no effective way to provide any notice to these other cleaners.

Here, the plaintiffs submitted a proposed "Notice of Your Right to "Opt-In" to Lawsuit Against William Nunn; Alaco Services, LLC; LRD Cleaning Services, LLC' and Weis Markets" and a consent form (see Document #15), and requested that this Notice be issued by mail, email, and any other appropriate method to all cleaners who were hired by the defendants to provide cleaning and janitorial services at Weis Markets or other stores within the three years prior to the filing of their complaint.

The defendants object to the plaintiffs' proposed Notice and Consent Form.  Specifically, the defendants object to the proposed Notice's reference to the court's neutrality being buried at the end of a paragraph, and to the fact that the Notice fails to indicate in a position of relative prominence that collective action status is non-final, and/or that no ruling has been made as to the merits of the underlying claims.  The defendants further object that the Notice fails to inform its recipients that they may be dismissed if they are determined not to be similarly situated and could be responsible for the payment of court costs.  The defendants also prefer that the Notice would inform its

recipients that they may also elect to retain their own counsel, rather than being represented by class counsel.  Of course, the plaintiffs respond that the defendants' proposals are unreasonable and aimed at chilling participation.

Acknowledging the importance of the Notice and Consent Form, and being mindful of my managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way, I will give the parties a period of thirty days within which to develop and agree upon the contents of an appropriate opt-in Notice and Consent Form.  This would allow the parties an opportunity to resolve objections to the form and scope of the plaintiffs' proposed Notice and Consent Form.  Should these efforts fail, counsel shall cross-file proposed notice forms.  I will then determine which Notice is more appropriate, with or without modification.

An appropriate Order follows.